OPINION
{¶ 1} Delinquent-Appellant Darian J. Smith ("Darian") appeals from the July 26, 2007 Judgment Entry of the Court of Common Pleas, Allen County, Ohio, Juvenile Division classifying Darian as a Juvenile Sex Offender Registrant and Tier III Sex Offender.
 {¶ 2} This matter stems from Darian's adjudication as delinquent for three counts of Rape, in violation of R.C. 2907.02(A)(1)(b) on January 18, 2006. Disposition occurred on February 16, 2006. The juvenile court ordered Darian committed to the legal care and custody of the Ohio Department of Youth Services ("DYS") for an indefinite term consisting of a minimum period of one year to a maximum period not to exceed his twenty-first birthday.
 {¶ 3} Darian's commitment to DYS was stayed, however, pending successful treatment at the Juvenile Residential Treatment Center of Northwest Ohio. However, the juvenile court subsequently determined that there was not room for Darian at the Juvenile Residential Treatment Center of Northwest Ohio and committed him to DYS. On September 13, 2006 Darian was granted early release from DYS and placed at the Juvenile Residential Treatment Center of Northwest Ohio.
 {¶ 4} On December 21, 2006 Darian was released from treatment. Two weeks prior to Darian's release, the juvenile court scheduled a juvenile sexual *Page 3 
offender classification pre-trial for January 24, 2007. The pre-trial conference on Darian's sex offender status was held on January 24, 2007. A second pre-trial conference was scheduled for April 4, 2007 in order to give Darian time to file a motion for a sexual offender classification evaluation. Darian failed to appear for the April 4, 2007 pre-trial and a bench warrant was issued for his arrest.
 {¶ 5} Darian was subsequently arrested and his sexual offender classification examination was scheduled for May 3, 2007. A sexual offender classification hearing was held in three parts, on June 20, 2007, July 12, 2007 and August 1, 2007.
 {¶ 6} We also note that during this time, Darian committed a violation of the terms of his parole, and admitted that violation on April 19, 2007. Based on this violation, Darian's parole was revoked and he was committed to DYS for a minimum period of thirty days to a maximum period not to exceed his attainment of twenty-one years of age.
 {¶ 7} On July 26, 2007 the juvenile court found that Darian should be classified as a Juvenile Sex Offender Registrant. The matter was subsequently scheduled for a hearing on August 1, 2007 so that the Court could explain Darian's duties to register. At the August 1, 2007 hearing, Darian was again determined to be a Juvenile Sex Offender. Moreover, Darian was designated a Tier III Sex Offender under the new version of R.C. 2150.01. *Page 4 
 {¶ 8} Darian now appeals asserting six assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED WHEN IT CLASSIFIED DARIAN S. AS A JUVENILE OFFENDER REGISTRANT BECAUSE IT DID NOT MAKE THAT DETERMINATION UPON HIS RELEASE FROM A SECURE FACILITY, IN VIOLATION OF R.C. 2152.83(B)(1). (JUNE 20, 2007, T.PP 1-70); (JULY 12, 2007, T.PP 1-14); (AUG. 1, 2007, T.PP. 1-12). (A-13)-(A-17).
 ASSIGNMENT OF ERROR II THE ALLEN COUNTY JUVENILE COURT ERRED WHEN IT CLASSIFIED DARIAN S. AS A JUVENILE OFFENDER REGISTRANT BECAUSE AS OF JULY 1, 2007, THERE EXISTED NO STATUTORY AUTHORITY TO CONDUCT A JUVENILE SEX OFFENDER CLASSIFICATION HEARING. (JULY 12, 2007, T.PP 1-14); (AUG. 1, 2007, T.PP. 1-12). (A-13)-(A-17).
 ASSIGNMENT OF ERROR III THE RETROACTIVE APPLICATION OF SENATE BILL 10 VIOLATES THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION AND THE RETROACTIVITY CLAUSE OF SECTION 28, ARTICLE II OF THE OHIO CONSTITUTION. SECTION 10, ARTICLE I OF THE UNITED STATES CONSTITUTION AND SECTION 28, AND ARTICLE II OF THE OHIO CONSTITUTION. (AUG. 1, 2007, T.PP. 1-12). (A-13)-(A-18).
 ASSIGNMENT OF ERROR IV THE RETROACTIVE APPLICATION OF SENATE BILL 10 VIOLATES THE SEPARATION OF POWERS DOCTRINE THAT IS INHERENT IN OHIO'S CONSTITUTION. (AUG. 1, 2007, T.PP. 1-12). (A-13)-(A-18).
 ASSIGNMENT OF ERROR V THE APPLICATION OF SENATE BILL 10 VIOLATES THE UNITED STATE'S [SIC] CONSTITUTION'S PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISMENTS [SIC]. *Page 5 EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION. (AUG. 1, 2007, T.PP. 1-12). (A-13)-(A-18).
 ASSIGNMENT OF ERROR VI THE RETROACTIVE APPLICATION OF SENATE BILL 10 VIOLATES THE DOUBLE JEOPARDY CLAUSE OF THE UNITED STATES CONSTITUTION AND THE RETROACTIVITY CLAUSE OF SECTION 28, ARTICLE II OF THE OHIO CONSTITUTION, FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION; SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION. (AUG. 1, 2007, T.PP. 1-12). (A-13)-(A-18).
 First Assignment of Error {¶ 9} In his first assignment of error, Darian argues that the trial court erred because his classification as a sexual offender did not occur at disposition or upon his release from a secure facility.
 {¶ 10} If a delinquent is not classified as a juvenile sex offender registrant pursuant to R.C. 2152.82 at the time of disposition, he may be classified pursuant to the procedures articulated in R.C. 2152.83. R.C. 2152.83 provides in pertinent part as follows:
 (B)(1) The court that adjudicates a child a delinquent child, on the judge's own motion, may conduct at the time of disposition of the child or, if the court commits the child for the delinquent act to the custody of a secure facility, may conduct at the time of the child's release from the secure facility, a hearing for the purposes described in division (B)(2) of this section if all of the following apply:
 (a) The act for which the child is adjudicated a delinquent child is a sexually oriented offense * * * *Page 6 
 (b) The child was fourteen or fifteen years of age at the time of committing the offense.
 (c) The court was not required to classify the child a juvenile sex offender registrant under section 2152.82 of the Revised Code * * *.
 {¶ 11} As an initial matter, we note that the meaning of "at the time of * * * release" as utilized in R.C. 2152.83(B)(1) has not been addressed frequently by the Ohio courts, nor is it specifically defined in the Ohio Revised Code.
 {¶ 12} The appellate courts that have addressed the requirements of R.C. 2152.83(B)(1) have frequently addressed cases dissimilar to the case at bar. See In re Murdick, 5th Dist. No. 2007CA00038, 2007-Ohio-6800 (the appellate court agreed with the trial court that it was without jurisdiction to conduct a juvenile sex offender hearing pursuant to R.C. 2152.83(B)(1) some eighteen months after the offender was released from a secure facility and almost a year after disposition. This determination, however, hinged on the fact that the offender had spent eighteen months in a treatment facility that did not qualify as a secure facility.[1]); In re McAllister, 5th Dist. No. 2006CA00073, 2006-Ohio-5554 (finding that a classification hearing held thirteen months after the juvenile was released from the secure facility did not meet the definition of "at the time of * * * release"). *Page 7 
 {¶ 13} However, in In re B.W., 2nd Dist. No. 1702,2007-Ohio-2096, the Second District Court of Appeals addressed a situation similar to the present case. In In re B.W. the juvenile's classification hearing was held a little more than two months after his release from a secure facility, while the juvenile was still under DYS supervision on parole. The Second District held that the hearing was proper, holding as follows:
 We cannot say that the trial court was unreasonable in holding the hearing in July. In other words, "at the time of the child's release from the secure facility" necessarily incorporates a short interval of time (here, two and a half months, and not thirteen) before jurisdiction is lost. Clearly, the legislature did not intend to mandate a classification simultaneous with release, but merely within a reasonable time given docket constraints and appropriate time for evaluations appurtenant to classification.
Id. at ¶ 14.
 {¶ 14} This court is inclined to adopt the analysis articulated inIn re B.W. In the present case, Darian was released from the Juvenile Residential Treatment Center of Northwest Ohio on December 21, 2006. The initial pre-trial conference, docketed prior to his release on December 8, 2006, occurred on January 24, 2007, approximately one month after Darian's release from a secure facility. Between the initial pre-trial and the final order adjudicating Darian to be a Juvenile Sex Offender on July 26, 2007, six months elapsed. Slightly more than seven months elapsed between Darian's release from the Juvenile Residential Treatment Center of Northwest Ohio and his adjudication as a juvenile sex offender registrant. *Page 8 
 {¶ 15} At the initial pre-trial conference, Darian requested time to have a sex offender classification evaluation completed. The juvenile court ordered a sexual classification evaluation at State expense, to be performed before the next pre-trial, scheduled for April 4, 2007. This evaluation was not completed prior to the April 4, 2007 pre-trial because Darian violated his parole by not attending counseling, going home, or attending school. In addition to violating his parole, Darian also did not show up for the April 4, 2007 pre-trial nor did he make himself available during that time frame for the sex offender classification evaluation.
 {¶ 16} A bench warrant issued; and Darian was arrested on April 8, 2007. The juvenile court scheduled the sex offender classification examination for May 3, 2007. After the evaluation, the Classification Hearing was scheduled for June 20, 2007. Prior to the hearing, Darian subpoenaed seven different witnesses to testify on his behalf.
 {¶ 17} The hearing was conducted, as scheduled, on June 20, 2003. A second hearing was set for July 3, 2007, but was continued at the request of the State. The hearing was rescheduled for July 12, 2007, which was conducted as scheduled. As noted earlier, the trial court entered a Judgment Entry on July 26, 2007 classifying Darian as a Juvenile Sex Offender Registrant.
 {¶ 18} In this case, the majority of the delays in holding the classification hearing resulted from Darian's parole violation and failure to appear. Further *Page 9 
delay resulted from his motion for a sex offender classification examination. Once the examination was completed and Darian was detained, the matter proceeded quickly. As a result, in this case, we cannot say that the length of time after release was unreasonable under R.C. 2152.83. Moreover, we find that the matter was promptly commenced and concluded upon Darian's release from a secure facility. Accordingly, Darian's first assignment of error is overruled.
 Second Assignment of Error {¶ 19} In his second assignment of error, Darian argues that there was no sex offender registration law in effect at the time he was adjudicated a Juvenile Sex Offender Registrant because Senate Bill 10 of the 127th General Assembly had repealed the old version of the sex offender statutes before enacting the new versions.
 {¶ 20} However, we find this interpretation is not supported by the plain language of Senate Bill 10. Senate Bill 10, Section 2 repeals the older versions of the law as follows:
 That existing sections 109.42, 109.57, 311.171, 1923.01, 1923.02, 2151.23, 2151.357, 2152.02, 2152.19, 2152.191, 2152.22, 2152.82, 2152.821, 2152.83, 2152.84, 2152.85, 2152.851, 2743.191, 2901.07, 2903.211, 2905.01, 2905.02, 2905.03, 2905.05, 2907.01, 2907.02, 2907.05, 2921.34, 2929.01, 2929.02, 2929.022, 2929.03, 2929.06, 2929.13, 2929.14, 2929.19, 2929.23, 2930.16, 2941.148, 2950.01, 2950.02, 2950.03, 2950.031, 2950.04, 2950.041, 2950.05, 2950.06, 2950.07, 2950.08, 2950.081, 2950.10, 2950.11, 2950.12, 2950.13, 2950.13, 2953.32, 2967.12, 2967.121, 2971.01, 2971.03, 2971.04, 2971.05, 2971.06, 2971.07, 5120.49, 5120.61, 5120.66, 5139.13, *Page 10 5149.10, 5321.01, 5321.03, and 5321.051 and sections 2152.811, 2950.021, 2950.09, and 2950.091 of the Revised Code are hereby repealed.
 {¶ 21} Section 2, as cited above, is deemed effective January 1, 2008 by Section 3 as follows:
 The amendments to sections 109.42, 109.57, 311.171, 2151.23, 2152.02, 2152.19, 2152.191, 2152.22, 2152.82, 2152.821, 2152.83, 2152.84, 2152.85, 2152.851, 2743.191, 2901.07, 2903.211, 2905.01, 2905.02, 2905.03, 2905.05, 2907.01, 2907.02, 2907.05, 2921.34, 2929.01, 2929.02, 2929.022, 2929.03, 2929.06, 2929.13, 2929.14, 2929.19, 2929.23, 2930.16, 2941.148, 2950.01, 2950.02, 2950.03, 2950.04, 2950.041, 2950.05, 2950.06, 2950.07, 2950.08, 2950.081, 2950.10, 2950.11, 2950.12, 2950.13, 2950.14, 2967.12, 2967.121, 2971.01, 2971.03, 2971.04, 2971.05, 2971.06, 2971.07, 5120.49, 5120.61, 5120.66, 5139.13, and 5149.10 of the Revised Code that are made by Sections 1 and 2 of this act, the enactment of sections 2152.831, 2152.86, 2950.011, 2950.15, and 2950.16 of the Revised Code by Section 1 of the act, and the repeal of sections 2152.811, 2950.021, 2950.09, and 2950.091 of the Revised Code by Section 2 of this act shall take effect on January 1, 2008.
(emphasis added).
 {¶ 22} Furthermore, we note that although Section 4 makes Sections 1-3 effective on July 1, 2007, this does not change the effective dates contained in each individual section for the enactment and repeal of individual provisions.
 {¶ 23} Therefore, all of the Ohio Revised Code portions repealed in Section 2 were repealed effective January 1, 2008, the same date that the new laws, as articulated in Section 1, became effective. The plain statutory language must *Page 11 
control. Storer Communications, Inc. v. Limbach (1988),37 Ohio St.3d 193, 194. Accordingly, Darian's second assignment of error is overruled.
 Third, Fourth, Fifth, and Sixth Assignments of Error {¶ 24} For ease of discussion, we choose to address Darian's final four assignments of error together. In those assignments of error, Darian argues that the application of Senate Bill 10 violates various constitutional provisions, specifically 1) the retroactive application violates the ex post facto clause; 2) the retroactive application violates the separation of powers doctrine; 3) the application amounts to cruel and unusual punishment; and 4) the retroactive application amounts to double jeopardy.
 {¶ 25} As an initial matter, with respect to the constitutionality of an enactment of the General Assembly, we note that the Ohio Supreme Court has previously held that
 "[a]n enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality." Id. at 147, 57 O.O. at 137, 128 N.E.2d at 63. "That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution." Xenia v. Schmidt (1920), 101 Ohio St. 437, 130 *Page 12 N.E. 24, paragraph two of the syllabus; State ex rel Durbin v. Smith (1921), 102 Ohio St. 591, 600, 133 N.E. 457, 460; Dickman, 164 Ohio St. at 147, 57 O.O. at 137, 128 N.E.2d at 63.
State v. Cook, 83 Ohio St. 3d 404, 409, 700 N.E. 2d 570, 1998-Ohio-291.
 {¶ 26} In State v. Cook, 83 Ohio St. 3d 404, the Ohio Supreme Court addressed whether Ohio's newly enacted sex offender statutes violated the retroactivity clause of the Ohio Constitution or the ex post fact clause of the United States Constitution as applied to previously convicted defendants. The court found that they did not. In State v.Williams, 88 Ohio St.3d 513, 728 N.E.2d 342, 2000-Ohio-428 the Ohio Supreme Court further held that those sex offender statutes did not violate double jeopardy or equal protection provisions of the United States Constitution.
 {¶ 27} To determine whether the Cook and Willams decisions are controlling here, we first address how Senate Bill 10 changed the sex offender registration statutes. Perhaps the most fundamental changes occur in R.C. 2950.01, which not only renames Ohio's sex offender classifications, but imposes different criteria for the imposition of the sex offender label.
 {¶ 28} Prior to the imposition of Senate Bill 10, a sentencing court was required to determine whether sex offenders fell into one of the following classifications: (1) sexually oriented offender; (2) habitual sex offender; or (3) sexual predator. R.C. 2950.09; State v. Cook,83 Ohio St. 3d at 407. When the *Page 13 
trial court made the determination that an offender should be classified as a sexual predator, the judge was to consider all relevant factors, including, but not limited to, all of the following enumerated in R.C. 2950.09(B)(3):
 (a) the offender's . . . age;
 (b) The offender's . . . prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed . . .;
 (d) Whether the sexually oriented offense for which sentence is to be imposed . . . involved multiple victims;
 (e) Whether the offender . . . used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender . . . previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender . . . completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender . . . participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender. . .;
 (h) The nature of the offender's . . . sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender . . . during the commission of the *Page 14 sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's . . . conduct.
R.C. 2950.09(B)(3)(a)-(j).
 {¶ 29} "In classifying an offender as a sexual predator, the Revised Code requires the trial court to make this finding only when the evidence is clear and convincing that the offender is a sexual predator." State v. Naugle, 3rd Dist. No. 2-03-32,2004-Ohio-1944 at ¶ 5 citing R.C. 2950.09(B)(4).
 {¶ 30} Senate Bill 10 abolished the prior classifications contained in R.C. 2950.01, substituting new classifications. An example is the definition of a Tier 1 Sex Offender/ Child-Victim Offender, as follows:
 (E) "Tier I sex offender/child-victim offender" means any of the following:
 (1) A sex offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to any of the following sexually oriented offenses:
 (a) A violation of section 2907.06, 2907.07, 2907.08, or 2907.32 of the Revised Code;
 (b) A violation of section 2907.04 of the Revised Code when the offender is less than four years older than the other person with whom the offender engaged in sexual conduct, the other person did not consent to the sexual conduct, and the offender previously has not been convicted of or pleaded guilty to a violation of section 2907.02, 2907.03, or 2907.04 of the Revised Code or a violation of former section 2907.12 of the Revised *Page 15 Code;
 (c) A violation of division (A)(1), (2), (3), or (5) of section 2907.05 of the Revised Code;
 (d) A violation of division (A)(3) of section 2907.323 of the Revised Code;
 (e) A violation of division (A)(3) of section 2903.211, of division (B) of section 2905.03, or of division (B) of section 2905.05 of the Revised Code;
 (f) A violation of any former law of this state, any existing or former municipal ordinance or law of another state or the United States, any existing or former law applicable in a military court or in an Indian tribal court, or any existing or former law of any nation other than the United States, that is or was substantially equivalent to any offense listed in division (E)(1)(a), (b), (c), (d), or (e) of this section;
 (g) Any attempt to commit, conspiracy to commit, or complicity in committing any offense listed in division (E)(1)(a), (b), (c), (d), (e), or (f) of this section.
 (2) A child-victim offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to a child-victim oriented offense and who is not within either category of child-victim offender described in division (F)(2) or (G)(2) of this section.
 (3) A sex offender who is adjudicated a delinquent child for committing or has been adjudicated a delinquent child for committing any sexually oriented offense and who a juvenile court, pursuant to section 2152.82, 2152. 83, 2152.84, or 2152.85 of the Revised Code, classifies a tier I sex offender/child-victim offender relative to the offense.
 (4) A child-victim offender who is adjudicated a delinquent child for committing or has been adjudicated a delinquent child for committing any child-victim oriented offense and who a *Page 16 juvenile court, pursuant to section 2152.82, 2152.83, 2152.84, or 2152.85 of the Revised Code, classifies a tier I sex offender/child-victim offender relative to the offense.
R.C. 2950.01.
 {¶ 31} The section also provides similar definitions of Tier II and Tier III sex offenders, and leaves little, if any discretion in classification to the court that sentenced the offender. R.C. 2950.01(F), (G). Prior to Senate Bill 10, "in those cases where an offender is convicted of a violent sexually oriented offense and also of a specification alleging that he or she is a sexually violent predator, the sexual predator label attaches automatically. R.C. 2950.09(A). However, in all other cases of sexually oriented offenders, only the trial court may designate the offender as a predator, and it may do so only after holding a hearing where the offender is entitled to be represented by counsel, testify, and call and cross-examine witnesses. R.C. 2950.09(B)(1) and (C)(2)." Cook, 83 Ohio St. 3d at 407. Now, that discretion is more limited. The new law severely limits the discretion of the trial court in imposing a certain classification on offenders. Instead, the new law requires trial courts to merely place the offender into a category based on their offense.
 {¶ 32} Senate Bill 10 also provides for the reclassification of all offenders who were classified prior to its enactment. R.C. 2950.031; R.C. 2950.032. This reclassification process affords no deference to the prior classification given by the *Page 17 
trial court. Rather, offenders are reclassified based solely on the new statutes as articulated in Senate Bill 10 which classify offenders based on the offense they committed.
 {¶ 33} In State v. Cook (August 7, 1997), 3rd Dist. No. 1-97-21 this Court found Ohio's sex offender classification statutes to be unconstitutional. Specifically, this Court found that with respect to Cook, who committed his crimes before new sex offender legislation was effective, but was sentenced after, that sex offender statutes violated the Ohio Constitutional protection against retroactive laws.
 To the extent it imposes additional duties and attaches new disabilities to past transactions, the statute is retroactive and violates the Ohio Constitution. Thus, as applied to Cook, R.C. 2950.09 is a retroactive application of a legislative enactment and Cook cannot be required to register as a sexual predator. However, Cook can be required to register as a sexual offender, pursuant to the law in force at the time of his offense. Since R.C. 2950.09, if applied to Cook, violates the Ohio Constitution, we need not address the issue of whether it violates the ex post facto clause of the United States Constitution. Cook's second assignment of error is sustained.
State v. Cook, supra, at *4.
 {¶ 34} The Ohio Supreme Court reversed the decision of this Court, inCook. In essence, the Ohio Supreme Court found that the sex offender registration statutes were remedial in nature and therefore, did not violate the ban on *Page 18 
retroactive laws as set forth in Section 28, Article II of the Ohio Constitution. The court reasoned as follows:
 This court has held that where no vested right has been created, "a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * * * created at least a reasonable expectation of finality." State ex rel. Matz v. Brown (1988), 37 Ohio St.3d 279, 281, 525 N.E.2d 805, 807-808.
 * * *
 Under Van Fossen and Matz, we conclude that the registration and address verification provisions of R.C. Chapter 2950 are de minimis procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950. As stated by the New Jersey Supreme Court in Doe v. Poritz (1995), 142 N.J. 1, 662 A.2d 367, "if the law did not apply to previously-convicted offenders, notification would provide practically no protection now, and relatively little in the near future. The Legislature reached the irresistible conclusion that if community safety was its objective, there was no justification for applying these laws only to those who offend or who are convicted in the future, and not applying them to previously-convicted offenders. Had the Legislature chosen to exempt previously-convicted offenders, the notification provision of the law would have provided absolutely no protection whatsoever on the day it became law, for it would have applied to no one. The Legislature concluded that there was no justification for protecting only children of the future from the risk of reoffense by future offenders, and not today's children from the risk of reoffense by previously-convicted offenders, when the nature of those risks were identical and presently arose almost exclusively from previously-convicted offenders, their numbers now and for a fair number of years obviously vastly exceeding the number of those who, after passage of these laws, will be convicted and released and only then, for the first time, potentially subject to community notification." Id. at 13-14, 662 A.2d at 373. *Page 19 
 Consequently, we find that the registration and verification provisions are remedial in nature and do not violate the ban on retroactive laws set forth in Section 28, Article II of the Ohio Constitution.
Cook, 83 Ohio St. 3d at 412-413.
 {¶ 35} The Cook Court also determined that Ohio's sex offender statutes did not violate the ex post facto clause of the United States Constitution, finding, after significant analysis, as follows:
 R.C. Chapter 2950 serves the solely remedial purpose of protecting the public. Thus, there is no clear proof that R.C. Chapter 2950 is punitive in its effect. We do not deny that the notification requirements may be a detriment to registrants, but the sting of public censure does not convert a remedial statute into a punitive one. Kurth Ranch, 511 U.S. at 777, 114 S.Ct. at 1945, 128 L.Ed.2d at 777, fn. 14. Accordingly, we find that the registration and notification provisions of R.C. Chapter 2950 do not violate the Ex Post Facto Clause because its provisions serve the remedial purpose of protecting the public.
Cook, 83 Ohio St. 3d at 423.
 {¶ 36} In Williams, the Ohio Supreme Court addressed whether Ohio's sex offender statutes violated the double jeopardy clause. Relying on their holding in Cook, the court found that it did not, holding that
 The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Fifth Amendment to the United States Constitution; see, also, Section 10, Article I, Ohio Constitution. Although the Double Jeopardy Clause was commonly understood to prevent a second prosecution for the same offense, the United States Supreme Court has applied the clause to prevent a state from punishing twice, or from attempting a second time to criminally *Page 20 punish for the same offense. See Kansas v. Hendricks, 521 U.S. at 369, 117 S.Ct. at 2085, 138 L.Ed.2d at 519; Witte v. United States (1995), 515 U.S. 389, 396, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351, 361. The threshold question in a double jeopardy analysis, therefore, is whether the government's conduct involves criminal punishment. Hudson v. United States (1997), 522 U.S. 93, 101, 118 S.Ct. 488, 494, 139 L.Ed.2d 450, 460.
 This court, in Cook, addressed whether R.C. Chapter 2950 is a "criminal" statute, and whether the registration and notification provisions involved "punishment." Because Cook held that R.C. Chapter 2950 is neither "criminal," nor a statute that inflicts punishment, R.C. Chapter 2950 does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. We dispose of the defendants' argument here with the holding and rationale stated in Cook.
 Williams, 88 Ohio St.3d at 527-528.
 {¶ 37} Moreover, this Court has followed the Cook holding, determining that Ohio's sex offender statutes did not amount to cruel and unusual punishment.
 The Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution prohibit the imposition of cruel and unusual punishment. The Ohio Supreme Court, in Cook, 83 Ohio St.3d at 423, 700 N.E.2d 570, concluded that the registration and notification provisions of R.C. Chapter 2950 are not punishment or punitive in nature but, rather, are remedial measures designed to ensure the public safety. Thus, the protections against cruel and unusual punishments are not implicated.
State v. Keiber, 3rd Dist. No. 2-99-51, 2000-Ohio-1666.
 {¶ 38} We are not persuaded that the Ohio Supreme Court would view the issues of criminality and punishment as applied to R.C. 2950 et. seq. in the Cook *Page 21 
and Williams decisions any differently with regard to the provisions of Senate Bill 10.
 {¶ 39} Finally, Darian argues that the law as enacted in Senate Bill 10 violates the separation of powers doctrine by limiting the discretion of the judiciary in classifying sex offenders. However, we note that the classification of sex offenders into categories has always been a legislative mandate, not an inherent power of the courts. Slagle v.State, 145 Ohio Misc.2d 98, 884 N.E.2d 109, 2008-Ohio-593. Without the legislature's creation of sex offender classifications, no such classification would be warranted. Therefore, with respect to this argument, we cannot find that sex offender classification is anything other than a creation of the legislature, and therefore, the power to classify is properly expanded or limited by the legislature.
 {¶ 40} For the foregoing reasons, Darian's third, fourth, fifth, and sixth assignments of error are overruled. The July 26, 2007 Judgment Entry of the Court of Common Pleas, Allen County, Ohio, Juvenile Division classifying Darian as a Juvenile Sex Offender Registrant and Tier III Sex Offender is affirmed.
Judgment affirmed.
 WILLAMOWSKI and ROGERS, JJ., concur.
[1] There appears to be no disagreement that the Juvenile Residential Treatment Center of Northwest Ohio qualifies as a secure facility. *Page 1