OPINION
{¶ 1} Appellant, James L. Thrower, Jr. ("Thrower"), appeals the judgment entered by the Juvenile Division of the Geauga County Court of Common Pleas. The trial court adjudicated Thrower a juvenile offender registrant and Tier I sex offender registrant.
 {¶ 2} On February 23, 2007, a four-count complaint was filed against Thrower, then age 15, alleging him to be delinquent. Count one of the complaint alleged that in late December 2006, Thrower committed an act with a four-year-old girl that would have constituted gross sexual imposition, in violation of R.C. 2907.05(A)(4), a third-degree felony, if committed by an adult. Count two alleged that on December 31, 2006, *Page 2 
Thrower committed an act with a 17-year-old girl that would have constituted rape, in violation of R.C. 2907.02(A)(2), a first-degree felony, if committed by an adult. Counts three and four alleged Thrower had violated his previously-imposed probation, both by committing the alleged sexual offenses and by taking prescription drugs that were not prescribed to him.
 {¶ 3} On April 2, 2007, the case came on for adjudication and disposition. Count one of the complaint was amended to charge sexual imposition, in violation of R.C. 2907.06(A)(1), a third-degree misdemeanor; count two was amended to charge gross sexual imposition, in violation of R.C. 2907.05(A)(1), a fourth-degree felony; count three was dismissed; and, count four was amended to reflect that Thrower abused Xanax and Percocet. Thrower pled true to the amended complaint.
 {¶ 4} That same day, the trial court entered its disposition order. Thrower was committed to the legal custody of the Ohio Department of Youth Services for six months to a maximum of age 21. The commitment was suspended so long as he obeyed the law and the terms of his probation. Thrower was further committed to the Portage-Geauga Detention Center for one to 90 days, with an order that he be released the next day, April 3, 2007, for residential treatment at The Village Network. The trial court further ordered that the Geauga County Department of Job and Family Services be given temporary custody of Thrower, in order to prepare and implement a case plan leading to reunification. The trial court ordered a review hearing for July 2, 2007 and notified the parties that the matter would be set for a classification hearing prior to Thrower's release from residential treatment. *Page 3 
 {¶ 5} Review hearings were held July 2, 2007 and September 26, 2007. On September 27, 2007, the trial court set the matter for a classification hearing on December 17, 2007. On December 4, 2007, Thrower moved the trial court to dismiss the classification hearing, contending the trial court had lost jurisdiction to hold such a hearing. On December 17, 2007, the trial court denied Thrower's motion and proceeded to hearing. The trial court adjudicated Thrower a juvenile offender registrant and Tier I sex offender registrant.
 {¶ 6} Thrower raises two assignments of error. His first assignment of error is:
 {¶ 7} "The trial court erred by determining that the minor child, James Thrower, Jr., is a juvenile offender registrant and Tier I offender when it did not have jurisdiction to do so."
 {¶ 8} Thrower contends the trial court erred in classifying him a juvenile offender registrant and Tier I sex offender eight and one-half months after its dispositional order and his transfer from the Portage-Geauga Detention Center to The Village Network.
 {¶ 9} The trial court conducted its adjudication hearing on December 17, 2007. Many of the relevant statutes in this matter were amended effective January 1, 2008. Thus, in this opinion, we apply the versions of the statutes in effect in December 2007, prior to the changes implemented by the enactment of Senate Bill 10. However, we note the procedural substance of the statutes in relation to this assignment of error have not been significantly changed.
 {¶ 10} Thrower was 15 at the time he committed the sexually-oriented offenses against his minor victims. As such, R.C. 2152.83(B)(1) applies to determine the proper timing of his classification hearing. The Village Network does not meet the statutory *Page 4 
definition of a secure facility. While ingress and egress is controlled by the staff, the facility is not locked down, which the statute requires. See, e.g., former R.C. 2950.01(K).
 {¶ 11} Thrower suggests we follow the opinion of the court in In reMcAllister, 5th Dist. No. 2006CA00073, 2006-Ohio-5554, wherein the trial court held a classification hearing, pursuant to R.C. 2152.83(B)(1), 13 months after the juvenile's release from a secure facility. Id. at ¶ 1-3, 7-9. The Fifth District reversed, holding that once the two times set forth in the statute for holding a classification hearing have passed, "the trial court's jurisdiction is terminated." Id. at ¶ 10.
 {¶ 12} The state urges us to follow the opinion of the Second Appellate District in In re B.W., 2d Dist. No. 1702, 2007-Ohio-2096, where the classification hearing was held two and one-half months after the juvenile's release from a secure facility. Id. at ¶ 14. The Second District held that the "legislature did not intend to mandate a classification simultaneous with release, but merely within a reasonable time ***." Id.
 {¶ 13} In this matter, the date Thrower was released from a secure facility is not disputed. However, the resolution of this case does not depend on his release date. Instead, the critical inquiry in this matter is what meaning to give the phrase "at the time of disposition." It is important to look to the language contained in other sections of the Revised Code concerning juvenile offender registration.
 {¶ 14} Thrower was adjudicated pursuant to former R.C. 2152.83, which provided, in part:
 {¶ 15} "(B)(1) The court that adjudicates a child a delinquent child, on the judge's own motion, may conduct at the time of disposition of thechild or, if the court commits *Page 5 
the child for the delinquent act to the custody of a secure facility, may conduct at the time of the child's release from the secure facility a hearing for the purposes described in division (B)(2) of this section if all of the following apply:
 {¶ 16} "(a) The act for which the child is adjudicated a delinquent child is a sexually oriented offense that is not a registration-exempt sexually oriented offense or is a child-victim oriented offense that the child committed on or after January 1, 2002.
 {¶ 17} "(b) The child was fourteen or fifteen years of age at the time of committing the offense.
 {¶ 18} "(c) The court was not required to classify the child a juvenile offender registrant under section 2152.82 of the Revised Code." (Emphasis added.)
 {¶ 19} Thrower argues the language "at the time of disposition" contained in R.C. 2152.83(B)(1) means "at the time of the dispositional hearing." We disagree with this interpretation. Instead, we interpret the language "at the time of disposition" to refer to the entire disposition of the juvenile.
 {¶ 20} R.C. 2152.82 concerns juvenile offender registration adjudications in cases where the child is a repeat offender. R.C. 2152.82(A)(3). The statute sets forth when the juvenile court shall issue the adjudication: "[a]n order required under division (A) of this section shall be issued at the time the judge makes the order ofdisposition for the delinquent child." R.C. 2152.82(B). (Emphasis added.)
 {¶ 21} This language unambiguously conveys the legislature's intent that the adjudication occur at the time of the dispositional order.
 {¶ 22} R.C. 2152.83(A) concerns the adjudication of 16 and 17 year olds. This section provides "[t]he court that adjudicates a child a delinquent child shall issue as *Page 6 part of the dispositional order *** an order that classifies the child a juvenile offender registrant ***." (Emphasis added.)
 {¶ 23} The language of this statute indicates the legislature's intent that the adjudication occur within the dispositional order.
 {¶ 24} In addition to the initial adjudication, the juvenile court is required to conduct a review hearing to decide whether the prior adjudication should continue pursuant to R.C. 2152.84, which provides, in part:
 {¶ 25} "(A)(1) When a juvenile court judge issues an order under section 2152.82 or division (A) or (B) of section 2152.83 of the Revised Code that classifies a delinquent child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04,2950.041, 2950.05, and 2950.06 of the Revised Code, upon completion ofthe disposition of that child made for the sexually oriented offense or the child-victim oriented offense on which the juvenile offender registrant order was based, the judge or the judge's successor in office shall conduct a hearing to review the effectiveness of the disposition and of any treatment provided for the child, to determine the risks that the child might re-offend, to determine whether the prior classification of the child as a juvenile offender registrant should be continued or terminated as provided under division (A)(2) of this section, and to determine whether its prior determination made at the hearing held pursuant to section 2152.831 of the Revised Code as to whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender should be continued or modified as provided under division (A)(2) of this section." (Emphasis added.) *Page 7 
 {¶ 26} The statute provides that a hearing to review an adjudication may be held "upon completion of the disposition" of the child offender. As used in this section, "disposition" clearly refers to the entire time of the disposition, not the dispositional hearing.
 {¶ 27} Thus, the legislature used phrases such as "at the time the judge makes the order of disposition" and "as part of the dispositional order" when the legislature intended for the juvenile court to take action contemporaneously with the dispositional hearing. R.C. 2152.82(B) and 2152.83(A). However, when the General Assembly uses only the term "disposition" it intends to refer to the entire disposition, instead of the dispositional hearing. R.C. 2152.84(A)(1). Thus, "disposition" as used in R.C. 2152.83(B)(1) refers to the entire disposition period.
 {¶ 28} Moreover, the language contained in subsequent subsections of R.C. 2152.83 suggests the hearing prescribed in R.C. 2152.82(B) may occur at any time during the disposition.
 {¶ 29} R.C. 2152.83(B)(2) provides:
 {¶ 30} "A judge shall conduct a hearing under division (B)(1) of thissection to review the effectiveness of the disposition made of the childand of any treatment provided for the child placed in a secure settingand to determine whether the child should be classified a juvenileoffender registrant. The judge may conduct the hearing on the judge's own initiative or based upon a recommendation of an officer or employee of the department of youth services, a probation officer, an employee of the court, or a prosecutor or law enforcement officer. If the judge conducts the hearing, upon *Page 8 
completion of the hearing, the judge, in the judge's discretion and after consideration of the factors listed in division (E) of this section, shall do either of the following:
 {¶ 31} "(a) Decline to issue an order that classifies the child a juvenile offender registrant ***;
 {¶ 32} "(b) Issue an order that classifies the child a juvenile offender registrant ***." (Emphasis added.)
 {¶ 33} This language clearly contemplates conducting the adjudication hearing during the course of the disposition period. This is because the juvenile court is to "review the effectiveness" of the disposition "to determine whether the child should be classified a juvenile offender registrant." Since the juvenile court is to consider the effectiveness of disposition prior to making its determination, the court is certainly permitted to conduct the hearing during the course of disposition. In addition, this language further demonstrates the legislature's intent that "disposition" refers to the entire disposition process, instead of the dispositional hearing.
 {¶ 34} Also, in making its determination under R.C. 2152.83(B), the trial court is to consider all relevant factors, including several listed factors, one of which is "[t]he results of any treatment provided to the child and of any follow-up professional assessment of the child." R.C. 2152.83(D)(6). Presumably, the majority of the treatment the child receives will occur subsequent to the dispositional hearing, during the course of the disposition itself. Thus, the fact that the juvenile court is to consider the child's progress in treatment suggests that the adjudication hearing may occur during the process of the disposition. *Page 9 
 {¶ 35} The plain language of R.C. 2152.83(B) provides "at the time of disposition." We believe this permits the juvenile court to conduct a sex-offender-classification hearing at any time during the juvenile's disposition. Such an interpretation is consistent with the language in R.C. 2152.84(A)(1), which permits the juvenile court to review an adjudication "upon the completion of the disposition of that child."
 {¶ 36} Moreover, such an interpretation is consistent with the general purpose of the juvenile justice system. As stated by the Supreme Court of Ohio:
 {¶ 37} "The legislative purpose regarding such errant children has been laid out in R.C. 2151.01: to provide for the care, protection, and mental and physical development of children, to protect the public from the wrongful acts committed by juvenile delinquents, and to rehabilitate errant children and bring them back to productive citizenship, or, as the statute states, to supervise, care for and rehabilitate those children. Punishment is not the goal of the juvenile system, except as necessary to direct the child toward the goal of rehabilitation." In reCaldwell (1996), 76 Ohio St.3d 156, 157.
 {¶ 38} With the goals of rehabilitating the child and protecting the public in mind, it is much more practical to conduct the adjudication hearing after the child has undergone some treatment. This allows the juvenile court's decision to be based on the child's progress during treatment. This case is a perfect example. The juvenile court committed Thrower to a nonsecure facility, where he underwent treatment. The juvenile court conducted quarterly progress hearings to evaluate how Thrower was doing in treatment. The juvenile court waited approximately eight months to conduct the *Page 10 
adjudication hearing. This decision permitted Thrower's therapist and his probation officer to offer probative testimony regarding his progress in treatment. Further, pursuant to the provisions in former R.C. 2152.84(A)(1), the trial court stated at the adjudication hearing that it planned on reviewing Thrower's adjudication upon the completion of his disposition.
 {¶ 39} In this matter, at the time of the adjudication, Thrower was still completing his disposition. He was still under the jurisdiction of the juvenile court. Therefore, the trial court was permitted to conduct the adjudication hearing pursuant to former R.C. 2152.83(B)(1).
 {¶ 40} Thrower's first assignment of error is without merit.
 {¶ 41} Thrower's second assignment of error is:
 {¶ 42} "The trial court erred when it conducted the sex offender classification hearing because it did not have statutory authority to do so."
 {¶ 43} Ohio's former sex-offender registration scheme was referred to as Megan's Law. State v. Brunelle-Apley, 11th Dist. No. 2008-L-014,2008-Ohio-6412, at ¶ 149. Effective January 1, 2008, substantive portions of Megan's Law were replaced by Ohio's version of the Adam Walsh Act. Id. As this court has stated:
 {¶ 44} "On July 27, 2006, President Bush signed into law a bill known as the Adam Walsh Act. The Ohio General Assembly chose to implement the Adam Walsh Act, and passed Senate Bill 10 in an effort to comply with the federal legislation. On January 1, 2008, Senate Bill 10 of the 127th General Assembly became effective[.]" State v. Johnson, 11th Dist. No. 2008-L-015, 2008-Ohio-4666, at ¶ 10. *Page 11 
 {¶ 45} Thrower asserts that conflicts between the effective dates of various sections of Senate Bill 10 created a vacuum in statutory authority for the trial court to conduct a classification hearing on December 17, 2007.
 {¶ 46} The Third Appellate District has addressed an identical argument in State v. Smith, 3d Dist. No. 1-07-58, 2008-Ohio-3234. InSmith, the court quoted various sections of Senate Bill 10. Id. at ¶ 20-21. Section 2 of Senate Bill 10 repeals the prior versions of several statutes. Id. at ¶ 20. Section 3 of Senate Bill 10 provides that the amendments to the statutes "that are made by sections 1 and 2 of [the] act" shall become effective on January 1, 2008. Id. at ¶ 21. Further, the Third District acknowledged that Section 4 states that Sections 1 to 3 become effective on July 1, 2007. Id. at ¶ 22. However, the court held that Section 4 did not alter the "effective dates contained in each individual section for the enactment and repeal of individual provisions." Id. In addition, the court held "[t]herefore, all of the Ohio Revised Code portions repealed in Section 2 were repealed effective January 1, 2008, the same date the new laws, as articulated in Section 1, became effective. The plain statutory language must control. Storer Communications, Inc. v. Limbach (1988),37 Ohio St.3d 193, 194 ***." Id. at ¶ 23. (Parallel citations omitted.)
 {¶ 47} The Fifth Appellate District has followed the Third District's holding in State v. Smith. See In re Marcio A, 5th Dist. No. 2007 CA 00149, 2008-Ohio-4523, at ¶ 8; In re Carr, 5th Dist. No. 08 CA 19,2008-Ohio-5689, at ¶ 27. In addition, both Fifth District opinions held:
 {¶ 48} "Even without the legislature expressly setting forth the repeal and effective dates, we, nonetheless, find Appellant's argument to be without merit. *Page 12 
Appellate courts in this State have consistently found the repealing clause of a statute does not take effect until the other provisions of the repealing act come into operation. ***
 {¶ 49} "`Where an act of the General Assembly amends an existing section of the Revised Code *** postpones the effective date of the amended section for (a time) after the effective date of the act, and repeals the "existing" section in a standard form of repealing clause used for many years by the General Assembly for the purpose of complying with Section 15(D) of Article II of the Constitution of Ohio, the constitutionality mandated repealing clause must be construed to take effect upon the effective date of the amended section in order to prevent a hiatus in statutory law, during which neither the repealed section nor the amended section is in effect.' Cox v. Ohio Dept. ofTransportation (1981), 67 Ohio St.2d 501, 508 ***." See In re MarcioA., at ¶ 9-10; In re Carr, at ¶ 28-29. (Internal and parallel citations omitted.)
 {¶ 50} In In re E.L., the Eighth Appellate District declined to followState v. Smith. In re E.L., 8th Dist. No. 90848, 2008-Ohio-5094, at ¶ 10-11. Instead of finding the plain language of the statute controlled, the Eighth District held Senate Bill 10 is ambiguous regarding the effective dates of the statutes. Id. at ¶ 11. To resolve the ambiguity, the court looked to the intent of the legislature and held "[t]he legislation had no intention to repeal or amend the substantive elements of offenses such as rape or kidnapping, or the court's authority to oversee the criminal justice system." Id. Thus, the Eighth District held that there is no interruption between the repeal of the former versions of the statutes and the effective date of the revised statutes. Id. In support of its holding, the Eighth District stated "[g]iven the background of S.B. 10, and the context within which it *Page 13 
must be read, we cannot conclude that the legislature intended to leave a six-month vacancy between repealing over 70 sections of the Revised Code and enacting the replacement amendments." Id. at ¶ 8. Also, the court quoted the following language from the Supreme Court of Ohio:
 {¶ 51} "`"The General Assembly will not be presumed to have intended to enact a law producing unreasonable or absurd consequences. It is the duty of the courts, if the language of a statute fairly permits or unless restrained by the clear language thereof, so to construe the statute as to avoid such a result."'" Id., quoting Prem v. Cox (1983),2 Ohio St.3d 149, 152, quoting Canton v. Imperial Bowling Lanes (1968),16 Ohio St.2d 47, paragraph four of the syllabus.
 {¶ 52} However, in December 2008, subsequent to the release of In reE.L., a different panel of the Eighth District followed the State v.Smith holding. State v. Ellis, 8th Dist. No. 90844, 2008-Ohio-6283, at ¶ 45.
 {¶ 53} Finally, the Ninth Appellate District has addressed the issue of whether Senate Bill 10 created a void in the statutory law of Ohio.In re T.C.H., 9th Dist. Nos. 24130 24131, 2008-Ohio-6614. The Ninth District held:
 {¶ 54} "This Court agrees with our sister districts that there was no void in the law created by Senate Bill 10. However, after thoughtful consideration, we reject the reasoning of the Third, Fifth and Eighth Districts to the extent that they analyze the issue from the perspectives of plain language and/or ambiguity. It is not as clear that the plain language of the act allows us to reach our ultimate conclusion. On the other hand, an ambiguity analysis necessarily implicates applying rules of statutory construction. Neither approach is applicable under these circumstances." Id. at ¶ 14. *Page 14 
 {¶ 55} In its conclusion, the Ninth District held:
 {¶ 56} "[T]his Court notes the wisdom of the Ohio Supreme Court in the [Cox v. Ohio Dept. of Transportation (1981), 67 Ohio St.2d 501] decision. In that case, the high court created a rule of law to ipso facto prevent a void in the statutory law without the need to resort to construing the specific language of the act or legislative intent. In the absence of express language creating a hiatus in the statutory law, a legislative act presumptively maintains a statutory framework. Accordingly, on the authority of Cox, this Court holds that the juvenile court was not without statutory authority in November 2007 to conduct an adjudicatory hearing." Id. at ¶ 15.
 {¶ 57} Following the Ninth District, we do not believe a plain language or ambiguity analysis is necessary for the resolution of this matter. Instead, we likewise hold that there was no void in the statutory scheme due to the enactment of Senate Bill 10, as there was no language in the act specifically creating such a hiatus. Id.
 {¶ 58} The trial court had jurisdiction to conduct the adjudication hearing in December 2007. Thrower's second assignment of error is without merit.
 {¶ 59} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs, COLLEEN MARY O'TOOLE, J., dissents with Dissenting Opinion. *Page 15