OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of B.W., filed September 5, 2006. On July 28, 2006, the trial court classified B.W. as a juvenile sex offender registrant. The events giving rise to this matter began in February, 2004, when B.W., aged 15, was alleged to have committed one count of rape, in violation of R.C. 2907.02, a felony of the first degree if committed by an adult. B.W. was a *Page 2 
resident of the Michaels Resource and Treatment Center, and the victim was another resident there. B.W. entered an admission of guilt to the charge of rape on September 7, 2004, he was adjudicated a delinquent child, and the court committed him to the Ohio Department of Youth Services ("DYS") for a minimum period of one year, or until his 21st birthday. The juvenile court's Disposition Entry provides that "Sex Offender Registration and sexual predator status will be determined upon release from DYS." B.W. was approved for supervised release in December, 2005. He was admitted into a group home known as Volunteers of America ("VOA"), located in Mansfield, Ohio, on May 18, 2006. While B.W. was living at VOA, it was alleged that he violated the terms of his parole by committing misdemeanor assault. He was discharged from the facility and taken into custody. The State of Ohio dropped the assault charge and instead charged B.W. with violating the rule that he remain in his placement at the VOA. On July 28, 2006, the juvenile court held the juvenile sex offender classification hearing and B.W. entered an admission to the parole violation at the same hearing.
 {¶ 2} B.W. asserts four assignments of error. His first assignment of error is as follows:
 {¶ 3} "CAN A TRIAL COURT CLASSIFY A JUVENILE DEFENDANT AS A JUVENILE OFFENDER REGISTRANT WHEN THE COURT DOES NOT CLASSIFY THAT DEFENDANT AT THE DISPOSITIONAL HEARING OR UPON HIS RELEASE FROM A SECURE FACILITY?"
 {¶ 4} If a delinquent child is fourteen or fifteen years old at the time he commits the offense, "the court that adjudicates a child a delinquent child, on the judge's own motion, may conduct at the time of disposition of the child or, if the court commits the *Page 3 
child for the delinquent act to the custody of a secure facility, may conduct at the time of the child's release from the secure facility, a hearing for the purposes described in division (B)(2) of this section * * * ." R.C. 2152.83(B)(1).
 {¶ 5} "`Secure facility' means any facility that is designed and operated to ensure that all of its entrances and exits are locked and under the exclusive control of its staff and to ensure that, because of that exclusive control, no person who is institutionalized or confined in the facility may leave the facility without permission or supervision. R.C.2950.01(K).
 {¶ 6} "A judge shall conduct a hearing under division (B) (1 ) of this section to review the effectiveness of the disposition made of the child and of any treatment provided for the child placed in a secure setting and to determine whether the child should be classified a juvenile offender registrant. The judge may conduct the hearing on the judge's own initiative or based upon a recommendation of an officer or employee of the department of youth services, a probation officer, an employee of the court, or a prosecutor or law enforcement officer. If the judge conducts the hearing, upon completion of the hearing, the judge, in the judge's discretion and after consideration of the factors listed in division (E) of this section, shall do either of the following:
 {¶ 7} "(a) Decline to issue an order that classifies the child a juvenile offender registrant * * *
 {¶ 8} "(b) Issue an order that classifies the child a juvenile offender registrant * * * ." R.C. 2152.83(B)(2).
 {¶ 9} R.C. 2152.83(E) provides that the trial court must consider "all relevant *Page 4 
factors" in making a decision under division (B) of the section, including, but not limited to, the nature of the offense, whether the child is genuinely remorseful, the public interest and safety, the results of any treatment and follow-up provided to the child.
 {¶ 10} "`Juvenile offender registrant' means a person who is adjudicated a delinquent child for committing on or after January 1, 2002, a sexually oriented offense that is not a registration-exempt sexually oriented offense or a child-victim oriented offense, who is fourteen years of age or older at the time of committing the offense, and who a juvenile court judge, pursuant to an order issued under section * * * 2152.83 * * * of the Revised Code, classifies a juvenile offender registrant and specifies has a duty to comply with section 2950.04, 2950.05, and 2950.06 of the Revised Code if the child committed a sexually oriented offense * * *." R.C. 2950.01.
 {¶ 11} B.W. argues that the court did not have jurisdiction to classify him, in reliance upon In re McAllister, Stark App. No. 2006CA00073, 2006-Ohio-5554. In McAllister, "the state's motion to classify appellant as a juvenile sex offender, the hearing and the trial court's determination were all made [thirteen months] after appellant's release from a secure facility. * * * `[T]he General Assembly's use of the word `may' and the use of the conjunction `or' triggers the trial court's discretion regarding when to make a sexual predator determination.' Therefore, the trial court has two times when itmay consider classification under R.C. 2152.83(B) (1 ): 1) at the time of disposition, or 2) at the time of release from a secure facility." Id. It is not clear whether McAllister was under DYS supervision at the time of his classification. Pursuant to R.C. 2152.83(B)(1), "the trial court erred in classifying appellant to be a juvenile sex offender." Id. *Page 5 
 {¶ 12} The State argues that the trial court did not err in classifying B.W., in reliance upon State v. Shie, Cuyahoga App. No. 86464, 2006-Ohio-2314. In Shie, the Defendant pled guilty to four counts of sexual battery, and as part of his plea agreement, the Defendant agreed to be classified as a sexual predator. On appeal, the Defendant argued that the trial court erred in accepting his stipulation to a sexual predator classification since he was not convicted of a sexually violent predator specification and the court did not hold a hearing. The court concluded that, "[w]hile conviction of a sexually violent predator specification results in the defendant's automatic classification as a sexual predator, * * *, this specification is not the only means by which a defendant may be designated as a sexual predator. Appellant's stipulation to the sexual predator classification waived the need for a hearing." Id.
 {¶ 13} B.W.'s hearing was neither contemporaneous with his dispositional hearing nor immediately upon his release from a secure facility. In In re C.A.C, Clark App. Nos. 2005-CA-134, 2005-CA-135, a classification hearing was held after the juvenile's dispositional hearing and release from a secure facility, and we declined to address the jurisdictional issue, noting that the statute appeared to contemplate only two points in time for the hearing, and further noting that the "issue is interesting, [and] the answer is not obvious to this court."
 {¶ 14} B.W.'s hearing was held in July, a little more than two months after B.W.'s release from a secure facility and while he was yet under DYS supervision, and, given the numerous factors that the trial court must consider in classifying a juvenile offender, R.C. 2152.83(B), (E), we cannot say that the trial court was unreasonable in holding the hearing in July. In other words, "at the time of the child's release from the *Page 6 
secure facility" necessarily incorporates a short interval of time (here, two and a half months, and not thirteen) before jurisdiction is lost. Clearly, the legislature did not intend to mandate a classification simultaneous with release, but merely within a reasonable time given docket constraints and appropriate time for evaluations appurtenant to classification. Since the trial court had jurisdiction to classify B.W., his first assignment of error is overruled.
 {¶ 15} We will address B.W.'s second and fourth assignments of error together. They are as follows:
 {¶ 16} "THE TRIAL COURT ERRED WHEN IT CLASSIFIED [B.W.] AS A JUVENILE OFFENDER REGISTRANT BECAUSE IT FAILED TO CONSIDER ANY OF THE FACTORS REQUIRED PRIOR TO ORDERING A DISCRETIONARY JUVENILE OFFENDER REGISTRANT CLASSIFICATION, IN VIOLATION OF R.C. 2152.83(B) AND R.C. 2152.83(E)." And,
 {¶ 17} "[B.W.] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION SIXTEEN OF THE OHIO CONSTITUTION WHEN DEFENSE COUNSEL FAILED TO EDUCATE HIMSELF ABOUT OHIO'S JUVENILE OFFENDER CLASSIFICATION PROCEDURES AND MISADVISED THE COURT REGARDING HIS CLIENT'S DUTY TO REGISTER UNDER R.C. 2152.82 AND R.C. 2152.83, WHICH LED TO [B.W.] RECEIVING A SEXUAL OFFENDER REGISTRANT CLASSIFICATION."
 {¶ 18} In determining whether a defendant has received the effective assistance of trial counsel, we apply the standards set forth inStrickland v. Washington (1984), *Page 7 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id., at 686. "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Id., at 687.
 {¶ 19} "The Ohio Supreme Court has enunciated a similar test for determining claims for ineffective assistance of counsel:
 {¶ 20} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard or reasonable representation and, in addition, prejudice arises from counsel's performance. (Internal citations omitted).
 {¶ 21} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendnat must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. (Internal citations omitted). *Page 8 
 {¶ 22} "In Strickland, supra, the Supreme Court instructed:
 {¶ 23} "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (Internal citations omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' (Internal citations omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (Internal citations omitted).
 {¶ 24} "The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, *Page 9 
discourage the acceptance of assigned cases, and undermine the trust between attorney and client.
 {¶ 25} "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' Strickland, supra, at 689-690." State v.Lloyd (March 31, 1999), Montgomery App. No. 15927.
 {¶ 26} At B.W.'s classification hearing, the court first determined that B.W. was not a sexual predator. R.C. 2950.09. The State then stated that it "would be moving forward as a juvenile offender registrant which would require a ten-year period for reporting. And if there needs to be testimony or evidence at this time, the State would be glad to do that but it's my understanding the Defendant without objection would be in agreement to the juvenile offender registrant classification * * * ."
 {¶ 27} B.W.'s counsel then remarked, "* * * The discussions we've had before and the research indicate that no registration is not an option. There has to be some *Page 10 
registration under these circumstances given the timing of the offense, my client's age, et cetera, the juvenile offender registrant is the lowest possible registration that my client could be ordered, and I've discussed that with him and his family that is here. * * * Unless I've said something inaccurate, if all of that is true, then my client, it's my understanding, wishes to have that registration and concurs with the State's recommendation and will dispense with any evidence being presented." The court then ordered B.W. classified as a juvenile offender registrant.
 {¶ 28} The juvenile court's obligation to consider the factors set forth in R.C. 2152.83(B) and (E) is mandatory. Only after such consideration shall the court either classify the child as a juvenile offender registrant or decline to do so. R.C. 2152.83(B)(2)(a), (b). The record reveals that B.W. successfully completed several treatment programs while at DYS. Given the profound impact of being labeled a juvenile offender registrant, B.W.'s counsel's failure to produce any evidence regarding B.W.'s treatment and progress, as well as his indication to B.W. and to the court that, contrary to the statute, B.W.'s classification was mandatory, constitute deficient performance.
 {¶ 29} Not only B.W.'s counsel, but the prosecuting attorney and the court, mistakenly believed that B.W.'s classification was mandatory. Although this belief was based on an error in the complaint, it was prejudicial to B.W.. While protection of the public is a laudable goal of sex offender designation, B.W. was just 15 at the time of the offense and still subject to DYS supervision and treatment modalities. It is undeniable that severe obligations were imposed upon B.W. for ten years. This stigma as a sex offender is significant and a real potential exists for harassment and long term *Page 11 
consequences stretching well into B.W.'s adulthood. B.W. deserved both an attorney and jurist that understood the non-mandatory nature of classification, given his age. Counsel's failure to present evidence and advocate for B.W., as well as Counsel's acquiescence in B.W.'s classification, render the result of the hearing unreliable. Counsel's ineffective assistance fell below reasonable representation, prejudicing B.W. such that a reasonable probability exists that, were it not for counsel's ineffective assistance, the result of the hearing would have been different.
 {¶ 30} Since the trial court erred in failing to consider the relevant factors at B.W.'s hearing, as mandated by R.C. 2152.83, and since B.W. received ineffective assistance of counsel, B.W.'s second and fourth assignments of error are sustained.
 {¶ 31} B.W.'s third assignment of error is as follows:
 {¶ 32} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT CLASSIFIED [B.W] AS A JUVENILE SEXUAL OFFENDER REGISTRANT."
 {¶ 33} This third assignment of error has been rendered moot by our resolution of the second and fourth assignments of error.
Reversed and remanded.
 FAIN, J. and GRADY, J., concur. *Page 1