DONOVAN, J.
{¶ 1} This matter is before the Court on the August 31, 2017 Notice of Appeal of S.J. S.J. was adjudicated delinquent on three counts of rape, in violation of R.C. 2907.02(A)(1)(b), and on September 2, 2016, the juvenile court committed him to the Department of Youth Services ("DYS") for one year, or until his twenty-first birthday, on each count, to be served consecutively. S.J. was also designated a Tier III juvenile offender registrant ("JOR").
{¶ 2} S.J. initially appealed from the juvenile court's judgment designating him a Tier III JOR. On June 23, 2017, this Court determined that "the trial court committed plain error by failing to determine whether S.J. was age-eligible to be designated as a JOR under R.C. 2152.83(B)," in other words, that he was 14 years of age or older at the time of the offense. This Court reversed and vacated the classification of S.J. as a Tier III JOR and remanded the matter to the juvenile court solely "for a redetermination of whether S.J. may be classified as a juvenile offender registrant." In re S.J. , 2d Dist. Montgomery No. 27287, 2017-Ohio-5499, 2017 WL 2729884, ¶¶ 2, 46 (" S.J. I "). Upon remand, on August 1, 2017, the juvenile court determined in part that S.J. "is to remain a Tier III Juvenile Sex Offender," and the instant appeal is from that determination. We hereby affirm the judgment of the trial court.
{¶ 3} S.J. was charged by way of complaint on February 27, 2016, with three counts of rape. The first two counts involved C.T., and the third count involved A.S. Both victims are S.J.'s cousins. The date range in the complaint for the offenses was "on or about 01-01-10 - 01-01-11." The complaint noted that S.J. was "a child about the age of 19 years (13 at time of offense)." At S.J.'s adjudication, T.J. and E.J., who are sisters and S.J.'s aunts, testified. A.S., who is T.J.'s son, and C.T., who is E.J.'s daughter, also testified. Finally, S.J. testified and denied committing the offenses.
*1064 {¶ 4} The hearing on remand occurred on July 28, 2017. At the start of the hearing, the following exchange occurred:
THE COURT:
* * *
The Court would note for the record that the youth will turn 21, in I believe, in two days, and so that, technically speaking, I believe I have to make the following determinations: One, does this Court find there's reasonable cause to believe that any of the offenses he was found responsible for took place on or after his date of birth that he would have been 14.
If I do make those findings, I have to redetermine the issue of classification, and then if I find that I can make a determination as to him being 14 at the time of committing one of the offenses, and if I decide to classify him, theoretically, not today, but back to the date of the original disposition, then, because he's turning 21 in two days and being released from the Department of Youth Services * * * I must make an additional determination because he's being released from DYS - - and I'm going to release him, actually, today from DYS - - whether or not he should stay classified or be modified down in terms of classification.
And I believe that's the process and what I plan to go through today, three specific issues. It all, of course, relies on my first decision.
* * *
THE COURT: * * * Mr. Carter, from your perspective as defense counsel, do you believe my process of how I should be proceeding is in line with the decision issued by the Second District Court of Appeals?
MR. CARTER: I don't see any variance at this stage, Your Honor.
* * *
THE COURT:
* * *
Counsel, the Court of Appeals in no way states the need for the Court to hold a hearing or to present arguments, simply for the Court to reissue my decision after reviewing the transcript, reviewing the facts. And that's how I plan to proceed.
* * *
I have reviewed the transcript, the file, and I'm going to go through in detail the breakdown of why I'm making the decision I will be making.
{¶ 5} As to counts one and three in the complaint, the court determined that there was not sufficient evidence presented to determine whether or not the rapes occurred prior or subsequent to S.J.'s fourteenth birthday. As to count two, the court found that there was sufficient evidence to conclude that the rape of C.T. took place on or after S.J. turned 14 on July 30, 2010. The court noted that T.J. testified that S.J. lived with her "during the summer of 2010 or maybe 2009." The court noted that "there's some conflicting testimony here," but T.J. "notes in her testimony that it was during the period of time in which [S.J.] had involvement with juvenile court, which is critical to this Court." The court noted that a "review of the youth's prior record shows that the Defendant's first involvement with this court began on July 29th, 2010, one day before his 14th birthday. And that was an offense that occurred on May 11th, 2010. That was case number 10-6597."
{¶ 6} The court noted that T.J. testified that A.S. was "about five when [S.J.] lived with them. A.S. specifically testified he was five years old when [S.J.] raped him." The court noted that A.S. was born in March 2015, and that "he would have been five years of age during the summer of 2010."
*1065 According to the court, T.J.'s and A.S.'s "testimony both indicate the offense occurred in 2010."
{¶ 7} The court further noted that C.T. "testified that [S.J.] lived with her family in either 2009 or 2010, when she was nine or ten years of age." The court noted that C.T. was born in June of 2002, and she "would have been nine years old in 2011 or ten years old in 2012." The court noted that C.T. "testified that the second incident occurred at the park near her house when [S.J.] was living with her family."
{¶ 8} The court further noted that C.T.'s mother, E.J., "testified that [S.J.] lived with her family in the summer and fall of 2010," and that [S.J.] "had lived with her sister, [T.J.] and her family in the summer of 2010 before he came to live with her and her family." The court noted E.J.'s testimony that "C.T. was eight going on nine years of age while [S.J.] lived with them." The court concluded, "[t]herefore, based on the testimony, [S.J.] would have lived with [E.J.] in the summer of 2010." The court noted that C.T.'s and E.J.'s "testimony indicate the offenses took place in 2010."
{¶ 9} Regarding whether or not the offense occurred before or after S.J.'s birthday, the court noted that S.J. testified that he lived with T.J. and E.J. in 2011. The trial court observed that S.J. "states that he remembers it was 2011 because that was when he caught his first juvenile case, when he and his brother were dealing with juvenile court. However, as reviewing the files, his testimony is inaccurate, because [S.J.'s] first juvenile case was, in fact, in 2010." The court noted that S.J. "testified that the summer that he lived with his aunt, he was 14 or 15, as A.S. was four or five, and that C.T. was eight or nine." The court noted that S.J. turned 14 on July 30, 2010, A.S. turned five in March of 2010, and C.T. turned eight in June of 2010.
{¶ 10} According to the court, "the evidence I heard indicates that two of these three charges in the indictment occurred during the summer of 2010: the charge as to C.T., occurring at the park near her house, and the charge as to A.S."
{¶ 11} The court noted that "C.T. testified that the charge relating to the rape in [S.J.'s] closet occurred before he came to live with them. If [S.J.] came to live with them in the summer of 2010, he would not yet have been 14 at the time of the rape in his closet." The court noted that the "testimony revealed that [S.J.] lived that first part of summer of 2010 with [T.J.], who was A.S.'s mother, the second part of that same summer with [E.J.], C.T.'s mother." The court determined that "while it is possible that [S.J.] had lived with A.S. in [T.J.'s] home on or after [S.J.'s fourteenth birthday], this Court does not believe * * * that beyond a reasonable doubt."
{¶ 12} The court concluded that "there's reasonable cause to believe that [S.J.] was living with C.T. in [E.J.'s] home and going to the park with her when the rape occurred and that that specific count, count II, did occur" on or after S.J.'s fourteenth birthday. The court concluded that "as to count II, the youth was 14 at the time that incident took place."
{¶ 13} The court noted as follows:
With the Court breaking down my thought process * * * in that way, I believe I have given sufficient findings to make a determination that count II, in fact, took place on or after this youth's 14th birthday.
I should further note that the Court of Appeals did uphold the concept of the State filing complaints in an indictment over an extended period of time versus date specific. They went through a number of cases in their decision, including *1066 one specific case where the complaint was for a period of almost three years.
And so the Court, again, does prefer that indictments have dates specific but understands that when the victims in these cases are extremely young that it is difficult sometimes to determine the specific dates; more the cause of action, the indictment, and the facts relate to periods of time. And in this case, the Court is finding that within the period of time of July 30th, 2010, or later, the second rape of C.T. took place.
With that finding, the Court is going to reinstitute my classification of the youth as a tier III sex offender. He'll be required to follow all the requirements of a tier III sex offender, which include classification for his life. * * *
{¶ 14} The court next concluded that S.J.'s offense was "an aggravated sexually oriented offense as defined by 2950.01(O). He, therefore, will have to register and confirm his registration for his lifetime with verification every 90 days after the date of his initial registration." The court advised S.J. regarding the consequences of any failure to register.
{¶ 15} The court then advised the parties as follows:
It's my understanding before he was committed to [DYS], he, in fact, was registered at that point in time.
Counsel, I believe I've dealt with all the issues raised by the Second District Court of Appeals. I now wish to proceed on the issue which they did not raise but I feel is appropriate at this point, and that is acknowledging the fact that the youth is turning 21 on July 30th, [2017,] which is two days from now.
* * * I received contact from [DYS] requesting this Court to decide if I wanted to release the youth from DYS today or should DYS expect to deliver him back from [DYS], where he would be officially released on his 21st birthday, which is in two days.
I made, frankly, the administrative decision to release him today from [DYS]. I saw no reason to have the staff at DYS deliver him back to DYS for him to be released from his current placement in two days.
With that determination, this Court, under * * * [R.C.] 2152.83(B) - - I must make a determination upon releasing a youth from DYS at the time of release whether or not this Court should modify the classification.
And to be fair to the young man, I believe that means today, because he's being released from DYS effective today's date; that he has the right to have his case reviewed for purposes of determination as to whether or not his classification should be terminated or reduced to either a tier II or a tier I.
Counsel, I discussed that aspect of this case with you in chambers. I believe there is unanimity in my analysis that this Court should make a review-of-classification decision today because of his release from DYS, which is imminent, which, in fact, will be today.
Does the State agree?
MS. BRUNS: Yes.
THE COURT: Does the defense agree?
MR. CARTER: That is unanimous, Your Honor.
THE COURT: * * *Counsel, does either one of you wish to present any testimony as relates to the determination of whether or not the youth should remain classified or be reclassified in any way?
{¶ 16} The prosecutor argued that, while at DYS, S.J. "refused to participate in any sex offender counseling" because his case *1067 was on appeal. The prosecutor argued that "it's difficult for him to present an argument with regard to why he should be declassified or placed in a lower classification when he hasn't received any treatment with regard to the sex offense for which he was found responsible." Defense counsel responded that S.J. was advised by his appellate counsel that he did not have to attend "sex offender treatments because his case was under appeal." The prosecutor responded that S.J.'s "appellate counsel did not appeal his adjudications; she simply appealed his registration."
{¶ 17} The court declined to modify or terminate S.J.'s Tier III sex offender classification, noting as follows:
* * * Under [R.C.] 2152.83(B), this Court made a determination upon my initial finding and committed the youth to [DYS].
The statute also requires this Court - - it doesn't give me an option; I have to make a determination as to whether or not the youth should be reclassified or declassified. And 2152.83 gives to the Court detailed instructions as to issues the Court should be looking to.
In reviewing all those issues, the Court is recalling the age of the victims in this case that were extremely young. The victims were small children.
This Defendant has shown no genuine remorse for any of the offenses, although he's had six years to think about them.
I do believe there could be a threat to the public interest and safety for a defendant who had raped two young children and failed to show any remorse and has failed to show to this Court any type of sex offender treatment that would justify this Court terminating or reducing his level of classification.
I reviewed section 2950.11 regarding community notification provisions.
I've reviewed section 2929.12, which deals with the seriousness and recidivism factors.
And all those - - again, we talked about the age, the physical and mental injury suffered by the victims, which we heard when this matter was tried. We heard about the physical injury, psychological injury - - there was no - - there was no visible physical injury but clearly psychological injury when a five-year-old is raped.
What is especially concerning to this Court - - and, again, Mr. Carter, your client may be in a catch-22, but in my mind, that's of his own accord in the fact that he's never acknowledged remorse for any of this. He simply made the decision for the last six months to not participate in sex offender treatment. That is a very serious issue for this Court.
When I take all of those points together, the complete lack of acknowledgement, the complete lack of accepting responsibility, the complete unwillingness to accept any kind of sex offender treatment - - even if he hadn't been classified, he still was ordered to have sex offender treatment. And at this point the Court is going to consider his excuse to be simply an excuse.
And therefore, the Court, upon his release from [DYS], is going to decide not to modify or terminate his sex offender classification.
{¶ 18} In an August 1, 2017 "Judge's Final Appealable Order," the juvenile court noted as follows:
For 2016-001252:
• The parties waived their right to present testimony.
*1068 • The Court reviewed ORC 2152.191, ORC 2152.83(B) and (D), ORC 2950.11(K), and ORC 2929.12(B) and (C), the testimony of each of the five witnesses, and the transcripts of the testimony of each witness, and considered several factors.
• The extremely young ages of the children.
• The youth has failed to show any remorse.
• The youth is a threat to the public's interest and safety.
• The youth failed to participate in any sex offender treatment.
{¶ 19} In a separate August 1, 2017 "Judge's Final Appealable Order," the court found as follows:
• [E.J.] is C.T.'s mother and she testified that [S.J.] lived with her family in the Summer and Fall of 2010. [E.J.] further testified that C.T. was eight, going on nine, years old while [S.J.] lived with them. C.T. was born [in June of 2002]. C.T. and [E.J.'s] testimony indicate that the offenses occurred in 2010.
• Based on the evidence presented, the Court finds beyond a reasonable doubt that the youth was living with C.T. in [E.J.'s] home and going to the park with her where the rape occurred, on and after July 30, 2010, his fourteenth birthday.
{¶ 20} S.J. asserts three assignments of error. His first assignment of error is as follows:
THE MONTGOMERY COUNTY JUVENILE COURT COMMITTED PLAIN ERROR WHEN IT CLASSIFIED S.J. AS A JUVENILE SEX OFFENDER REGISTRANT WITHOUT HOLDING A HEARING IN VIOLATION OF R.C. 2152.83 ; FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND ARTICLE I, SECTION 16, OHIO CONSTITUTION.
{¶ 21} S.J. argues that "the court may impose classification under R.C. 2152.83(B)only after it conducts a hearing to consider certain statutory factors and determine whether the child should be labeled a juvenile offender registrant." (Emphasis sic.) S.J. asserts that the court was required "to determine (1) whether the child is age eligible for classification, (2) whether the child should be classified as a juvenile offender registrant, and (3) if registration is appropriate, determine whether the child should be classified as a Tier I, II, or III sex offender." S.J. argues that "because children under the age of 14 years old are not subject to classification, R.C. 2152.83 requires a court to determine whether a child is age-eligible prior to classification."
{¶ 22} According to S.J., "the complaint spanned a time that S.J. was both 13 and 14 years old and specifically alleged that S.J. 'a child about the age of 19 years (13 at the time of the offense), who appears to be delinquent in that on or about 01-01-10 - 01-01-11' committed three counts of rape." S.J. asserts that although he "was adjudicated delinquent [for committing] those offenses, the trial testimony did not include any testimony that the offenses occurred after S.J.'s 14th birthday." S.J. argues that "because the validity of the adjudication did not depend on whether S.J. was 13 or 14 years old at the time of the offense[s], the State sought to prove merely that the offense occurred sometime between January 1, 2010 and January 1, 2011 by directing questions to that specific timeframe." According to S.J., the "prosecutor consistently questioned witnesses regarding their living arrangements and recollections of 2010-2011," and "the witnesses were questioned and cross-examined with one objective - to determine whether S.J.
*1069 committed the offenses of rape during the timeframe alleged in the complaint."
{¶ 23} S.J. argues that, because the age requirements for classification differ from the requirements for adjudication, the juvenile court was required to hold a hearing prior to making a determination whether S.J. was at least 14 years old at the time of the offense. S.J. asserts that he was not afforded the opportunity to make arguments regarding his age at the time of the offenses at his adjudication. He argues that the juvenile court committed plain error and that, without "additional evidence, the juvenile court could not infer from the vague and often confusing testimony, that S.J. committed any of the alleged offenses after he turned 14 years old on July 30, 2010." S.J. argues that but for "this error, the juvenile court would not have classified S.J. as a juvenile offender registrant."
{¶ 24} The State responds that "a hearing was previously held which was then supplemented upon remand in order for the trial court to make a determination of whether S.J. should be classified as a sex offender." According to the State, "another hearing was held regarding S.J.'s sex offender classification such that S.J.'s first assignment of error is meritless."
{¶ 25} Directing our attention to the exchange at the start of the hearing upon remand, the State argues that "when the trial court indicated it would reconsider its decision after reviewing the transcript and the facts without additional submission of evidence, S.J. did not object." The State argues that S.J. waived this argument on appeal and S.J. cannot demonstrate plain error.
{¶ 26} The State further asserts that, at "the September 2, 2016 hearing, the trial court determined S.J.'s disposition and sex offender classification. The sex offender classification was decided based on the evidence presented at trial, the SOAP assessment, the Formal Review recommendations, the victims' family's statements, S.J.'s prior record and DIR[1] , and arguments of counsel." According to the State, "[c]ollectively, the trial court's determination from the September 2, 2016 hearing and the July 28, 2017 hearing, sufficiently met the statutory requirements to classify S.J. as a Tier III sex offender. Therefore, S.J. did have a hearing and his first assignment of error fails."
{¶ 27} The State further asserts that even "if the first hearing did not sufficiently cover all the requirements of R.C. 2152.83(B), the trial court was permitted, and in fact did, hold a hearing regarding sex offender classification prior to S.J.'s release from DYS, a secure facility, on July 28, 2017, in accordance with R.C. 2152.83(B)." The State argues that the juvenile court "considered the factors listed in R.C. 2152.83(D), which included the factors in R.C. 2950.11(K), and the seriousness and recidivism factors under R.C. 2929.12."
{¶ 28} In reply, S.J. argues that the State "confuses the error presented in this case and ignores the fact that the juvenile court's age determination was made without holding a hearing on the matter." S.J. reasserts that, because "the age requirements for classification differ from the requirements for adjudication, the juvenile court was required to hold a hearing prior to making a determination whether S.J. was at least 14 years old at the time of the offense. S.J. asserts that at the hearing, the "parties would have been permitted to present evidence and make arguments regarding S.J.'s age at the time of the offense." S.J. asserts that the State fails to *1070 recognize that the juvenile court cannot undergo a discretionary classification analysis without first determining whether a child is age eligible for classification. S.J. asserts that "the juvenile court committed plain error by refusing to conduct a hearing or allow argument and instead issu[ing] a decision after reviewing the records and testimony presented at trial."
{¶ 29} As this Court has previously noted:
Plain error signifies an error affecting a substantial right that was not brought to the attention of the trial court at the appropriate time. Crim. R. 52(B). In order to prevail under a plain error standard of review, an appellant must establish that the outcome of his or her trial would clearly have been different had the alleged error not occurred. State v. McCleod (Dec. 12, 2001), Jefferson App. No. 00 JE 8, 2001-Ohio-3480 [2001 WL 1647305] ; citing State v. Waddell (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043, 1045. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances only and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, ¶ 3 of the syllabus.
State v. Mullins , 2d Dist. Montgomery No. 22301, 2008-Ohio-2892, 2008 WL 2404196, ¶ 22.
{¶ 30} "The age of a delinquent child at the time the offense was committed determines whether and how the child may be classified as a sex offender. R.C. 2152.82 to 2152.86 and Chapter 2950 delineate Ohio's statutory scheme for juvenile-sex-offender classification and registration." In re D.S. , 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 13.
{¶ 31} R.C. 2152.191 provides:
If a child is adjudicated a delinquent child for committing a sexually oriented offense or a child-victim oriented offense, if the child is fourteen years of age or older at the time of committing the offense, and if the child committed the offense on or after January 1, 2002, both of the following apply:
(A) Sections 2152.82 to 2152.86 and Chapter 2950. of the Revised Code apply to the child and the adjudication.
(B) In addition to any order of disposition it makes of the child under this chapter, the court may make any determination, adjudication, or order authorized under sections 2152.82 to 2152.86 and Chapter 2950. of the Revised Code and shall make any determination, adjudication, or order required under those sections and that chapter.
{¶ 32} "Thus, as a threshold matter, only a child 14 years of age or older at the time of the offense is subject to classification and the corresponding registration requirements." In re D.S. at ¶ 13. We note that in remanding the matter to the juvenile court, this court quoted In re D.S., which held at paragraph one of the syllabus as follows:
When a delinquent child disputes that he or she was at least 14 years old at the time the offenses were committed and age cannot be established from the undisputed allegations in the complaint, the juvenile court must make a determination of age eligibility before or during the sex-offender classification hearing and prior to subjecting the child offender to registration and notification requirements under R.C. 2152.82 through 2152.86 and Chapter 2950.
{¶ 33} "If a child is 14 or 15 years of age at the time of an offense, the court has discretion over classifying a juvenile as a juvenile offender registrant, where the juvenile is not a repeat offender or a serious *1071 youth offender." S.J. I , 2d Dist. Montgomery No. 27287, 2017-Ohio-5499, at ¶ 25, citing In re D.S. at ¶ 14, which cited R.C. 2152.83(B) and In re I.A. , 140 Ohio St.3d 203, 2014-Ohio-3155, 16 N.E.3d 653, ¶ 6.
{¶ 34} "The court may impose classification under R.C. 2152.83(B) only after it conducts a hearing to consider certain statutory factors and determine whether the child should be labeled a juvenile-offender registrant." In re D.S. at ¶ 14. "If the judge determines that it is appropriate to impose juvenile-offender-registrant status, the judge must conduct a tier-classification hearing to determine whether the child should be classified as a Tier I, II, or III sex offender. R.C. 2152.83(C) and 2152.831." Id. As this Court noted in S.J. I , "[t]here is no dispute that R.C. 2152.83(B) is the pertinent provision for purposes of this case, as S.J. was not a repeat offender, nor was he designated a serious youthful offender under R.C. 2152.86." In re S.J. I. at ¶ 27.
{¶ 35} R.C. 2152.83 provides:
(B)(1) The court that adjudicates a child a delinquent child, on the judge's own motion, may conduct at the time of disposition of the child or, if the court commits the child for the delinquent act to the custody of a secure facility, may conduct at the time of the child's release from the secure facility a hearing for the purposes described in division (B)(2) of this section if all of the following apply:
(a) The act for which the child is adjudicated a delinquent child is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002.
(b) The child was fourteen or fifteen years of age at the time of committing the offense.
(c) The court was not required to classify the child a juvenile offender registrant under section 2152.82 of the Revised Code or as both a juvenile offender registrant and a public registry-qualified juvenile offender registrant under section 2152.86 of the Revised Code.
(2) A judge shall conduct a hearing under division (B)(1) of this section to review the effectiveness of the disposition made of the child and of any treatment provided for the child placed in a secure setting and to determine whether the child should be classified a juvenile offender registrant. The judge may conduct the hearing on the judge's own initiative or based upon a recommendation of an officer or employee of the department of youth services, a probation officer, an employee of the court, or a prosecutor or law enforcement officer. If the judge conducts the hearing, upon completion of the hearing, the judge, in the judge's discretion and after consideration of the factors listed in division (E) of this section, shall do either of the following:
(a) Decline to issue an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code ;
(b) Issue an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code and that states the determination that the judge makes at the hearing held pursuant to section 2152.831 of the Revised Code as to whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender.
(C)(1) Prior to issuing an order under division (B)(2)(b) of this section, the *1072 judge shall conduct a hearing under section 2152.831 of the Revised Code to determine whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender. The judge may hold the hearing at the same time as the hearing under division (B) of this section.
{¶ 36} Regarding a JOR designation, R.C. 2152.83 provides as follows:
(D) In making a decision under division (B) of this section as to whether a delinquent child should be classified a juvenile offender registrant, a judge shall consider all relevant factors, including, but not limited to, all of the following:
(1) The nature of the sexually oriented offense or the child-victim oriented offense committed by the child;
(2) Whether the child has shown any genuine remorse or compunction for the offense;
(3) The public interest and safety;
(4) The factors set forth in division (K) of section 2950.11 of the Revised Code, provided that references in the factors as set forth in that division to "the offender" shall be construed for purposes of this division to be references to "the delinquent child;"
(5) The factors set forth in divisions (B) and (C) of section 2929.12 of the Revised Code as those factors apply regarding the delinquent child, the offense, and the victim;
(6) The results of any treatment provided to the child and of any follow-up professional assessment of the child.
{¶ 37} R.C. 2950.11(K) provides the following list of factors:
(1) The offender's age;
(2) The offender's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexually oriented offenses or child-victim oriented offenses;
(3) The age of the victim of the sexually oriented offense or child-victim oriented offense the offender committed;
(4) Whether the sexually oriented offense or child-victim oriented offense the offender committed involved multiple victims;
(5) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or child-victim oriented offense the offender committed or to prevent the victim from resisting;
(6) If the offender previously has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be a criminal offense, whether the offender completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sexually oriented offense or a child-victim oriented offense, whether the offender or delinquent child participated in available programs for sex offenders or child-victim offenders;
(7) Any mental illness or mental disability of the offender;
(8) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense the offender committed or the nature of the offender's interaction in a sexual context with the victim of the child-victim oriented offense the offender committed, whichever is applicable, and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
(9) Whether the offender, during the commission of the sexually oriented offense *1073 or child-victim oriented offense the offender committed, displayed cruelty or made one or more threats of cruelty;
(10) Any additional behavioral characteristics that contribute to the offender's conduct.
{¶ 38} "The factors under R.C. 2929.12(B) and (C) involve consideration of whether the offender's conduct was 'more serious than conduct normally constituting the offense,' or 'less serious than conduct normally constituting the offense * * *.' " S.J. I. , 2d Dist. Montgomery No. 27287, 2017-Ohio-5499, at ¶ 29.
{¶ 39} We cannot conclude that the juvenile court committed plain error in violation of R.C. 2152.83 in classifying S.J. as a JOR. In other words, S.J. failed to establish that if the trial court had adduced additional testimony, it would have concluded that S.J. was not age-eligible for classification. We conclude that S.J. is incorrect in asserting that the trial testimony did not include any testimony that the offense in count II occurred after his fourteenth birthday. After determining that S.J. was age-eligible for classification (as discussed below under S.J.'s second assigned error) by thoroughly reviewing and comparing the testimony of each witness adduced at trial, the court proceeded with the analysis required by R.C. 2152.83 before releasing him from DYS. The court then declined to modify his classification after argument by the parties, and after, consistent with the above factors, concluding that S.J. lacked remorse and posed a danger to the public's interest and safety, and considering the young age of the (multiple) victims. Since plain error is not demonstrated, S.J.'s first assignment of error is overruled.
{¶ 40} S.J.'s second assignment of error is as follows:
THE JUVENILE COURT VIOLATED S.J.'S RIGHT TO DUE PROCESS WHEN IT DETERMINED THAT HE WAS AT LEAST 14 YEARS OLD DURING THE COMMISSION OF THE OFFENSE BECAUSE THAT DECISION WAS BASED ON TRIAL TESTIMONY PRESENTED FOR THE PURPOSE OF ADJUDICATION, NOT AGE DETERMINATION. FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND ARTICLE I, SECTION 16, OHIO CONSTITUTION.
{¶ 41} S.J. asserts that "age at the time of the offense must be proven beyond a reasonable doubt, or the child may not be classified as a juvenile offender registrant." He argues that a "reviewing court may substitute its own judgment for that of the factfinder when the verdict is against the manifest weight of the evidence." S.J. asserts that because "the validity of S.J.'s adjudication did not depend on whether he was 13 or 14 years old at the time of the offense, the State did not present evidence that S.J. committed the alleged offenses on or after his 14th birthday." He argues that when "considering the testimony and evidence in a light most favorable to the State, at most, the State proved that S.J. committed the offenses of rape against A.S. and C.T. sometime during the summer of 2010; but failed to prove beyond a reasonable doubt that S.J. committed any of those offenses on or after July 30, 2010, his 14th birthday."
{¶ 42} S.J. asserts that because he "would have turned 14 years old on July 30, 2010, he would have been 13 years old for a majority of the time alleged in the complaint," and nothing "in the record indicates exact dates upon which offenses took place." S.J. argues that "the witnesses were questioned and cross-examined with one objective - to determine whether S.J. committed the offenses of rape during the *1074 timeframe alleged in the complaint." He asserts that "the evidence presented at trial fails to establish that the offenses against C.T. occurred on or after July 30, 2010." S.J. argues that because "the State failed to present sufficient evidence to support age eligibility for classification, this Court should vacate his Tier III classification."
{¶ 43} S.J. asserts that the "juvenile court's age determination was against the manifest weight of the evidence." He argues that "witness testimony was vague and confusing with respect to dates - which are critical for a finding that S.J. was age eligible for classification." S.J. argues that due "to their young ages at the time of the offenses and the length of time since the incidents, both victims were unable to recall when the alleged offenses occurred." He argues that "neither of S.J.'s aunts provided testimony proving that any of the offenses occurred when S.J. was 14 years old."
{¶ 44} S.J. directs our attention to S.J. I , 2d Dist. Montgomery No. 27287, 2017-Ohio-5499, at ¶ 15, fn. 2, wherein this Court observed in part:
* * * At a minimum, the witness testimony during the adjudication hearing was confusing with respect to dates, and even years. This is not unexpected when witnesses, particularly children, testify about events that occurred several years earlier. In cases involving sexual misconduct with a child, the precise dates and times of alleged offenses often cannot be determined with specificity. * * * Nonetheless, as our discussion will indicate, the fact that an offense occurred during the time-span listed in a complaint is different from deciding a specific age that events occurred for purposes of designating a juvenile as a sex offender registrant. The latter determination is critical when age is a predicate for classification.
{¶ 45} Finally, S.J. argues that "it is a miscarriage of justice for the juvenile court to determine that S.J. was 14 years old during the commission of count II because the testimony alone was not enough to prove that the offense occurred on or before S.J.'s 14th birthday."
{¶ 46} The State responds that "the record affirmatively supports the trial court's determination that S.J. was 14 years of age at the time of the offense and does not constitute an abuse of discretion." The State notes that "S.J. did not object to the trial court's determination that he was 14 years old at the time of the offense. Therefore, this argument is limited to a review for plain error."
{¶ 47} The State "submits that the age determination by the trial court does not need to be proven beyond a reasonable doubt as S.J. contends because it is not an element of the offense and is solely applicable to post-adjudication proceedings. Instead, age determination is a finding of fact by the trial court pursuant to R.C. 2152.82(B)(1)(b)." According to the State, the "finding is reviewed under an abuse of discretion standard." The State argues that "the trial court found beyond a reasonable doubt that S.J. was 14 years of age at the time he committed Count II which is not against the manifest weight of the evidence." The State asserts that "a reviewing court should not substitute its judgment for that of the trier of facts on the issue of credibility."
{¶ 48} According to the State, while "S.J. complains the time frame alleged in the complaint did not identify specific dates, this is not required for sex offenses involving juveniles." The State argues that "some inability to recount specific dates regarding offenses that occurred several years prior is to be expected, particularly *1075 when young children are involved and reporting is delayed. Some vague testimony should not make witnesses deemed not credible."
{¶ 49} The State asserts that C.T. was born in June of 2002, and that she testified that S.J. raped her the second time "after he moved in with her family which formed the incident charged in Count II." According to the State, "S.J. did not move in with C.T.'s family until after he left T.J.'s house at the end of the summer, into the fall of 2010. * * * The rape occurred when C.T. was eight or nine years old, going on nine years old, which necessarily had to be after June * * * 2010." The State notes that "C.T.'s mother testified that S.J. lived with them due to going back and forth with the juvenile court which, did not begin until at least July 29, 2010; the day before S.J.'s 14th birthday." Finally, the State asserts that based upon "the timing of events, the rape involving C.T. in Count II would not have occurred until after S.J. was 14 years old."
{¶ 50} In reply, S.J. argues that "the juvenile court's determination that a child is age eligible or ineligible for registration is not subject to discretion. The juvenile court's decision is not based on discretion, but rather the sufficiency of the evidence presented." Quoting S.J. I, 2d Dist. Montgomery No. 27287, 2017-Ohio-5499, at ¶ 42, S.J. argues " 'the court could not have found him a juvenile offender registrant if he were only 13 years old at the time of the offenses.' " S.J. argues that "the proper standard of review is whether, in the light most favorable to the State, the evidence presented was sufficient to prove beyond a reasonable doubt that S.J. was at least 14 years old at the time of the offense."
{¶ 51} As this Court has noted:
Due process of law, as guaranteed both by Section 1 of the Fourteenth Amendment to the United States Constitution and by Article I, Section 16 of the Ohio Constitution, encompasses, at a minimum, notice and an opportunity to be heard. See State v. Edwards (1952), 157 Ohio St. 175, 178, 47 O.O. 122, 105 N.E.2d 259.
State v. Crews , 179 Ohio App.3d 521, 2008-Ohio-6230, 902 N.E.2d 566, ¶ 9 (2d Dist.).
{¶ 52} We agree with the State that S.J.'s failure to contest the court's determination that S.J. was age eligible for classification waives all but plain error. Having reviewed the evidence adduced at trial, we further conclude that plain error is not demonstrated in the juvenile court's determination that S.J. committed the second rape of C.T. on or after his fourteenth birthday.
{¶ 53} C.T. testified that while S.J. resided with her family, while her mother was at work, she and S.J. "would always go across the street to the park, and each time he would always have me do stuff, like jack him off, and he would finger me, and he would do stuff like that." C.T. testified that she was born in June of 2002. E.J., C.T.'s mother, testified that S.J. and his brother "came to live with me because they was going through some stuff with the juvenile court, with my sister." At the time S.J. came to live with them, E.J. testified that C.T. "was eight years old, going on nine." C.T. turned eight in June of 2010. E.J. further testified that in 2010, S.J. and his brother stayed with her sister, T.J. "all that summer before they came with me."
{¶ 54} S.J. testified that he was "fourteen, fifteen" when he lived with E.J. The court indicated that its records reflect that S.J.'s first involvement with the juvenile court occurred after a May 11, 2010 criminal damaging charge, and it found that S.J. incorrectly testified that he "caught my *1076 first juvenile case in 2011, and that's when I was going over to their house, because * * * me and my brother was going through it with the courts." The timing of S.J.'s involvement in the juvenile court system was "critical" to the court, and we conclude that the evidence adduced supports the juvenile court's determination that the second rape of C.T. occurred on or after S.J.'s fourteenth birthday. See also S.J. I , 2d Dist. Montgomery No. 27287, 2017-Ohio-5499, at ¶ 48 (Hall, J., dissenting) ("the weight of the evidence about the second encounter with the second victim establishes that S.J. was 14 when he engaged in that conduct.").
{¶ 55} The court noted that S.J.'s involvement with the court began on July 29, 2010, one day before he turned fourteen. As this Court noted in S.J. I, "[i]n cases involving sexual misconduct with a child, the precise dates and times of alleged offenses cannot be determined with specificity." Id. at ¶ 15, fn. 2. Since S.J.'s due process rights were not violated, his second assignment of error is overruled.
{¶ 56} S.J.'s third assignment of error is as follows:
S.J. WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
{¶ 57} According to S.J., "trial counsel failed to object to the juvenile court's failure to conduct a new hearing pursuant to R.C. 2152.83, to allow additional evidence regarding S.J.'s age at the time of the offenses, or to allow counsel to present argument regarding S.J.'s age at the time of the offenses." S.J. directs our attention to this Court's decision in In re B.W. , 2d Dist. Darke No. 1702, 2007-Ohio-2096, 2007 WL 1288529.
{¶ 58} The State responds that "the trial court did hold a hearing as explained in the State's response to the first assignment of error and S.J. was subject to sex offender classification as ordered by the trial court as outlined in the State's response to the second assignment of error." The State asserts that "for S.J.'s third assignment of error to have merit, he must demonstrate that but for counsel's failure to object to classification, the result of the proceeding would have been different, i.e., S.J. would not have been classified as a Tier III sex offender. However, as addressed in the preceding assignments of error, the trial court held an oral hearing and properly classified S.J."
{¶ 59} As this Court has previously noted:
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), paragraph two of the syllabus; State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Two elements must be demonstrated: 1) that counsel's representation fell below an objective standard of reasonableness; and 2) that counsel's errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the proceeding would have been different. Id. In our review of an ineffective assistance of counsel claim, "we will not second-guess trial strategy decisions, and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " State v. English, 2d Dist. Montgomery No. 26337, 2015-Ohio-1665 [2015 WL 1966049], ¶ 10, *1077 quoting State v. Mason , 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998).
State v. Hartman , 2016-Ohio-2883, 64 N.E.3d 519, ¶ 45 (2d Dist.).
{¶ 60} We agree with the State that, given our resolution of the first two assignments of error, S.J.'s ineffective assistance of counsel argument fails; sufficient evidence supports a finding that S.J. was 14 years old when he raped C.T. for the second time, and the juvenile court accordingly did not err in classifying him as a JOR. Any objection by defense counsel to the proceedings before the juvenile court would not have altered the outcome of the proceedings upon remand.
{¶ 61} Finally, we conclude that S.J.'s reliance on In re B.W., 2d Dist. Darke No. 1702, 2007-Ohio-2096, is misplaced. Therein, this Court concluded as follows:
The juvenile court's obligation to consider the factors set forth in R.C. 2152.83(B) and [ (D) ] is mandatory. Only after such consideration shall the court either classify the child as a juvenile offender registrant or decline to do so. R.C. 2152.83(B)(2)(a), (b). The record reveals that B.W. successfully completed several treatment programs while at DYS. Given the profound impact of being labeled a juvenile offender registrant, B.W.'s counsel's failure to produce any evidence regarding B.W.'s treatment and progress, as well as his indication to B.W. and to the court that, contrary to the statute, B.W.'s classification was mandatory, constitute deficient performance.
In re B.W. at ¶ 28.
{¶ 62} The record before us reveals that S.J. declined treatment while at DYS, and his counsel made the argument that his decision to do so was based upon the advice of appellate counsel. There is no suggestion that counsel for S.J. failed to adduce favorable evidence as in In re B.W. We note that the trial court did not hinge its refusal to reclassify upon a lack of treatment while S.J.'s appeal was pending.
{¶ 63} S.J.'s third assignment of error is overruled.
{¶ 64} The judgment of the trial court is affirmed.
FROELICH, J. and TUCKER, J., concur.

Dispositional Investigation Report.